IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CINDY D. REED,                    §
                                  §
          Plaintiff,              §
                                  §
v.                                §          CIVIL ACTION NO. H-16-2684
                                  §
CENTERPOINT ENERGY, INC.,         §
                                  §
          Defendant.              §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cindy D. Reed, brings this action against defendant, CenterPoint Energy, Inc., asserting claims for employment discrimination based on race (African-American) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, _et seq._, and age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and comparable claims for violation of the Texas Labor Code.[1]  Pending before the court is Defendant CenterPoint Energy, Inc.'s Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 21), and Plaintiff's Opposed Motion for Referral to Mediation (Docket Entry No. 25).  For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted, plaintiff's Motion for Referral to Mediation will be denied, and this action will be dismissed with prejudice.

---

[1]Plaintiff's First Amended Complaint, Docket Entry No. 11.

# I. Undisputed Facts

Defendant hired plaintiff as a customer service representative in November of 2003.[2] When plaintiff was hired she signed a personal commitment to provide "World Class Customer Service" and to "[i]nteract with team members and supervision in a manner that shows concern and respect for others,"[3] and plaintiff received a copy of defendant's Ethics Compliance Code, which included an obligation to show respect for others in the workplace and to adhere to defendant's policy against discrimination and harassment.[4] In 2006 defendant promoted plaintiff to a Customer Service Lead position.[5] Plaintiff did not seek a promotion in the five years preceding the filing of this action.[6]

On January 5, 2016, plaintiff received a Final Warning from her second-line supervisor, Shonda Johnson, stating:

> Your management team spoke with you many times during 2015 to reiterate your need to improve how you communicate and interact with team members as a Team Lead. Despite our discussions, your actions continue to

---

[2]Oral and Video Taped Deposition of Cindy Denise Reed, January 31, 2018 ("Plaintiff's 2018 Deposition"), Exhibit A to Defendant's MSJ, Docket Entry No. 21-1, pp. 4:4-14 and 5:9-10.

[3]Id. at 11:13-12:1. See also My Personal Commitment, Exhibit 9 to Plaintiff's 2018 Deposition, Docket Entry No. 21-1, p. 28.

[4]Id. at 12:2-22. See also Ethics and Compliance Code of Conduct for Consultants, Contractors, Suppliers and Vendors, Exhibit 10 to Plaintiff's 2018 Deposition, Docket Entry No. 21-1, pp. 29-31.

[5]Id. at 6:19-20.

[6]Oral Deposition of Cindy Denise Reed, May 4, 2017 ("Plaintiff's 2017 Deposition"), Exhibit B to Defendant's MSJ, Docket Entry No. 21-2, p. 10:13-23.

be inconsistent with Company expectations and violate the following policies (attached):

- Performance Expectations Policy and Standards of Conduct/Business Ethics — following basic standards of courtesy and good behavior; respecting the rights of others.

- Protection of Confidential Information — sharing medical information about an employee.

You must do the following to continue employment with CenterPoint:

- Treat all employees with respect and courtesy;

- Communicate respectfully and constructively with employees;

- Honor employee confidentiality and do not discuss performance issues of your peers and employees with persons uninvolved in the issue; and

- Recognize the limits of your authority and do not exceed it; escalate issues beyond your authority to your leadership team.

Failure to improve will result in termination of your employment. Your signature acknowledges this discipline and the fact that your Management's expectations have been discussed with you.[7]

The Final Warning resulted from a complaint by an employee who alleged that plaintiff had discussed his medical leave with other employees.[8]

---

[7]Plaintiff's 2018 Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 21-1, pp. 15:22-16:17. See also Final Warning — Violations of Performance Expectations and Standards of Conduct, Exhibit 1 to Plaintiff's 2018 Deposition, Docket Entry No. 21-1, p. 23.

[8]Plaintiff's 2017 Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 21-2, pp. 8:6-9:25, and 19:1-20.

On June 3, 2016, plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission in which she claimed that defendant "commenced and carried out a course of conduct which discriminated against [her] on account of [her] age, over 40, and [her] race, African American,"[9] and

a.   [I]ntentionally subjected me to abusive working conditions which were calculated to have the effect and which did have the effect of inflicting emotional distress upon me.

b.   [P]laced arbitrary and capricious goals or quotas for me to attain with the intent to force me from my job for pretextual reasons.

c.   [I]ntentionally subjected me to abusive working conditions by requiring me to perform my required work duties under circumstances and under a supervisor or supervisors who uttered maliciou[s] and belittling statements to me on account of my age and my race.

d.   [F]ailed to promote me although I was qualified for the position(s) which I sought. My employer has denied me promotions and advancements afforded other persons outside my protected categories.

e.   All the above actions by my employer amounted to discrimination against me or harassment of me [on] account of my race and my age all in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act and Tex. Labor Code Ann. Sec. 21.001 et seq.[10]

On August 4, 2016, plaintiff filed this action in the 129th Judicial District Court of Harris County, Texas, alleging that defendant discriminated against her on the basis of race and age by

---

[9]Charge of Discrimination, Exhibit 5 to Plaintiff's 2017 Deposition, Docket Entry No. 21-2, p. 23.

[10]Id.

-4-

subjecting her to a hostile work environment.[11]  On September 2, 2016, defendant removed plaintiff's action to this court.[12]

Despite having received a Final Warning in 2016, plaintiff received an Effective rating on her 2016 performance review, and received a pay raise in 2017.[13]  Nevertheless, on July 10, 2017, defendant terminated plaintiff's employment for "Policy Violations," stating:

> The company recently investigated and corroborated complaints that you favored certain team members, disclosed confidential information about at least one team member, and, most concerning, openly accused and shunned members of your team who you believe made complaints about you on the Company's Helpline.  We consider your actions to be an attempt to quash criticism and retaliate against those who have a legitimate right to utilize the Company's Helpline to report good faith complaints.  This behavior is strictly prohibited by the Company and grounds for termination.
>
> Accordingly, your employment with the Company is terminated effective July 10, 2017.[14]

On August 8, 2017, plaintiff filed Plaintiff's First Amended Complaint (Docket Entry No. 11), which added an allegation that defendant had terminated her employment in violation of Title VII.[15]

---

[11]Plaintiff's Original Petition, Exhibit A to Defendant's Notice of Removal, Docket Entry No. 1-1, pp. 1-5.

[12]Defendant's Notice of Removal, Docket Entry No. 1.

[13]Compensation Statement 2017, Exhibit 33 to Plaintiff's 2018 Deposition, Docket Entry No. 21-1, p. 33.

[14]Termination Document, Docket Entry No. 21-1, p. 32.

[15]Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 4 ¶ 10.

On April 5, 2018, defendant moved for summary judgment on all of plaintiff's claims.[16]

## II. **Plaintiff's Motion for Referral to Mediation**

On May 1, 2018, plaintiff filed her Opposed Motion for Referral to Mediation (Docket Entry No. 25). Plaintiff states that the parties have discussed mediation and possible mediators but have been unable to agree upon a mediator, and asks the court to designate a mediator and order the case to mediation.

The initial Docket Control Order entered in this action on November 18, 2016 (Docket Entry No. 8), required mediation or a settlement conference before the magistrate judge and set the date for filing dispositive motions as 30 days after the mediator or the magistrate judge declares an impasse.[17] On August 23, 2017, the court entered an Order Granting Agreed Motion for Continuance (Docket Entry No. 14) and an Amended Scheduling Order (Docket Entry No. 15), which similarly required mediation or a settlement conference before the magistrate judge, and set the date for filing dispositive motions as 30 days after the mediator or the magistrate judge declares an impasse.[18] On November 14, 2017, however, defendant filed an Unopposed Motion for Continuance of Remaining

---

[16]Defendant's MSJ, Docket Entry No. 21.

[17]Docket Control Order, Docket Entry No. 8, p. 2 ¶¶ 8-9.

[18]Docket Control Order, Docket Entry No. 15, p. 2 ¶¶ 6-7.

Scheduling Order Deadlin[e]s (Docket Entry No. 17), seeking to extend the dates for completion of discovery, filing of all other pretrial motions, the joint pretrial order, and docket call. The defendant's unopposed motion did not mention mediation and/or a date for filing dispositive motions that differed from the date for filing all other pretrial motions. The court granted the defendant's motion the same day (Docket Entry No. 18), ordering

> that the Court's Scheduling Order is hereby amended as follows:
>
> Completion of Discovery by April 26, 2018
>
> All other pretrial motions will be filed and served by April 5, 2018
>
> Joint Pretrial Order will be filed by May 3, 2018
>
> Docket Call set for 3:00 PM May 11, 2018.

In accordance with the November 14, 2017, amended scheduling Order, defendant filed the pending motion for summary judgment (Docket Entry No. 21) on April 5, 2018, and on April 24, 2018, plaintiff filed her Response to Motion for Summary Judgment (Docket Entry No. 22). Because plaintiff did not oppose entry of the scheduling order that eliminated the requirement for mediation or a settlement conference before the magistrate judge and set the date for filing of dispositive motions 30 days after the mediator or the magistrate judge declared an impasse, because both parties have acted in accordance with the amended scheduling Order, and because this action is ripe for resolution pursuant to the

-7-

Defendant's Motion for Summary Judgment, the plaintiff's Opposed
Motion for Referral to Mediation will be denied.

### III.  **Defendant's Motion for Summary Judgment**

Plaintiff alleges that defendant discriminated against her on
the basis of race and age in violation of Title VII and the ADEA,
and comparable provisions of the Texas Labor Code by subjecting her
to abusive working conditions, engaging in conduct intended to
deprive her of available promotions and job opportunities, and
terminating her employment.[19]

Defendant argues that it is entitled to summary judgment on
all of plaintiff's claims because plaintiff is unable to present
evidence capable of satisfying the elements of a prima facie case
of discrimination under Title VII, the ADEA, or the Texas Labor
Code, and because plaintiff is unable to present evidence capable
of showing that the legitimate, non-discriminatory reason for which
she was terminated, i.e., violation of company policies, was a
pretext for discrimination or for intent to interfere with rights
guaranteed by Title VII, the ADEA, or the Texas Labor Code.[20]

Plaintiff's Response addresses her claim that her employment
was terminated for discriminatory reasons but does not address her
other claims for failure to promote, abusive work environment, or

_____

[19]Plaintiff's First Amended Complaint, Docket Entry No. 11,
pp. 3-4 ¶¶ 8-9.

[20]Defendant's MSJ, Docket Entry No. 21.

age discrimination.[21]  Local Rule 7.4 provides that "[f]ailure to respond will be taken as a representation of no opposition." S.D. Tex. R. 7.4 (2000).  The court, therefore, takes plaintiff's failure to respond to Defendant's MSJ on her claims for failure to promote, abusive work environment, and age discrimination as a representation of no opposition to defendant's summary judgment evidence.  Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988) (when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law).

## A.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements

---

[21]See Plaintiff's Response to Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 22, and Plaintiff's Memorandum of Law and Facts in Opposition to Motion for Summary Judgment ("Plaintiff's Memorandum of Law & Facts"), Docket Entry No. 22-2.

of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553-54 (1986)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u> If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## B.   Applicable Law

Plaintiff may establish a claim for employment discrimination based on race in violation of Title VII, and/or age in violation of the ADEA, and/or comparable provisions of the Texas Labor Code by using direct evidence or by using the indirect method of proof set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973). <u>See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.</u>, 778 F.3d 473, 475 (5th Cir. 2015) (Title VII); <u>Reed v. Neopost USA, Inc.</u>,

701 F.3d 434, 439 (5th Cir. 2012) (ADEA and Texas Labor Code).[22]
Direct evidence of discrimination "is evidence that, if believed,
proves the fact of discriminatory animus without inference or
presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310
n.6 (5th Cir. 2004). Plaintiff has not cited direct evidence of
discrimination and has not argued that this is a direct evidence
case. Because plaintiff has attempted to show discrimination
through circumstantial evidence, the McDonnell Douglas burden-
shifting framework governs her claims.

Plaintiff's initial burden under the McDonnell Douglas
framework is to establish a prima facie case of discrimination
based upon her race or her age. Nichols v. Loral Vought Systems
Corp., 81 F.3d 38 (5th Cir. 1996). "[T]o establish a *prima facie*
case, a plaintiff need only make a very minimal showing." Id. at
41. "A *prima facie* case raises an inference of unlawful
discrimination." Id. If plaintiff establishes a prima facie case
of discrimination, the burden shifts to the defendant-employer to
articulate a legitimate, non-discriminatory reason for its actions.

---

[22]The Texas Supreme Court has noted the parallels between the
federal and state anti-discrimination laws. See Mission
Consolidated Independent School District v. Garcia, 372 S.W.3d 629,
633 (Tex. 2012) ("Section 21.051 is effectively identical to Title
VII, its federal equivalent, except that Title VII does not protect
against age and disability discrimination. (Those forms of
discrimination are addressed in separate statutes.)"; Specialty
Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996)
("Because one purpose of the Commission on Human Rights Act is to
bring Texas law in line with federal laws addressing
discrimination, federal case law may be cited as authority.").

"The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" Id. (quoting St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the defendant meets this burden, "the plaintiff is given the opportunity to demonstrate that the defendant's articulated rationale is merely a pretext for discrimination." Id. "If [plaintiff] can raise a genuine issue of material fact as to whether [she] has established pretext, that will suffice to avoid summary judgment." Id. Plaintiff may also survive defendant's motion for summary judgment on her Title VII claims for race discrimination by presenting evidence that the defendant's reason for its adverse action, while true, is only one of the reasons for its conduct, and that another "motivating factor" was the plaintiff's protected characteristic.

C.   **Application of the Law to the Undisputed Facts**

   1.   Plaintiff's Title VII Claims for Race Discrimination Fail

Title VII protects individuals from discrimination by an employer based on the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that defendant discriminated against her on the basis of race in violation of Title VII and comparable provisions of the Texas Labor Code by subjecting her

a.    . . . to abusive working conditions by requiring [her] to perform her required work duties under a supervisor who repeatedly subjected her to outrageous and offensive verbal abuse in and around the area where she performed her duties[, and]

b.    . . . engag[ing] in an ongoing course of conduct which was intended to deprive [her] of available promotions and job opportunities which were provided to less qualified persons outside her protected categories. . .[23]

Plaintiff also alleges that defendant discriminated against her on the basis of race by terminating her employment.[24]

Defendant argues that it is entitled to summary judgment on plaintiff's race discrimination claims because plaintiff has admitted that her claim regarding promotions is baseless, and because plaintiff is unable to establish a prima facie case with respect to her hostile environment and termination claims.[25] Alternatively, defendant argues that plaintiff was terminated for legitimate, non-discriminatory reasons and that plaintiff is unable to present evidence capable of showing either that the defendant's reason for terminating her was not true and, instead, a pretext for race discrimination, or that her termination was otherwise motivated by race discrimination.[26]

---

[23]Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 3 ¶ 8.

[24]Id. at 4 ¶ 9.

[25]Defendant's MSJ, Docket Entry No. 21, pp. 11-16.

[26]Id. at 16.

(a)  Plaintiff Admits that Her Failure to Promote Claim
     is Baseless

Defendant argues that plaintiff's claim for failure to promote
and/or denial of promotion opportunities based on race should be
dismissed because "[i]n addition to admitting that she did not
apply for any promotions in the last few years of her employment,
[plaintiff] testified under oath at her deposition that she was not
denied any promotion opportunities because of her race."[27]  During
her deposition plaintiff testified as follows:

> Q.  Any other way you feel you were discriminated against
>     because of your -- your race?
>
> A.  I'm not for sure if I was discriminated against
>     [because of] my race.  However, people would -- my
>     coworkers would always say, "You know you're not
>     well-liked by Shonda.  Right?  You're not really --
>     you can apply for whatever you want to apply for.
>     As long as she has a foot in it, you're not going
>     anywhere."
>
>     It was just common knowledge that she really didn't
>     care for me.
>
> Q.  Okay.
>
> A.  I don't think that was race.  I just think that was
>     personal.
>
> Q.  Okay.  Do you think you were denied any promotion
>     opportunities because of your race?
>
> A.  No.   I think my -- I think my promotion
>     opportunities was personal.[28]

---

[27]Id. at 12 (citing Plaintiff's 2018 Deposition, Exhibit A to
Defendant's MSJ, Docket Entry No. 21-1, p. 21:17-20).

[28]Plaintiff's 2018 Deposition, Exhibit A to Defendant's MSJ,
Docket Entry No. 21-1, p. 21:4-20.

Plaintiff's Response does not address or cite any evidence in support of her asserted claim for failure to promote or denial of promotion opportunities based on her race. The court therefore accepts as uncontested the plaintiff's deposition testimony that any denial of promotion opportunities she may have experienced resulted not from race discrimination but, instead, from her supervisor's dislike. Accordingly, the court concludes that defendant is entitled to summary judgment on plaintiff's claim for racially discriminatory failure to promote or denial of promotion opportunities.

(b) Plaintiff Fails to Establish a Prima Facie Case for a Racially Discriminatory Hostile Environment

For a Title VII hostile work environment claim plaintiff must show she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. See Hernandez v. Yellow Transportation, Inc., 670 F.3d 644, 651 (5th Cir.), cert. denied, 133 S. Ct. 136 (2012) (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). For harassment to affect a term, condition, or privilege of employment, it "must be 'both objectively and subjectively offensive.'" Id. (citing Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283-84 (1998)). In determining whether a work

environment is objectively hostile or abusive and therefore actionable under Title VII, courts look to the totality of the circumstances and examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citing Ramsey, 286 F.3d at 268). See also Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 371 (1993). Conduct that is merely offensive is not actionable. Id. "[The] conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 118 S. Ct. at 2284.

Defendant argues that plaintiff's allegations of an abusive work environment, even if true, are in no way related to her race, and do not meet the demanding standard required for her claim.[29] In support of this argument, defendant cites plaintiff's 2017 and 2018 deposition testimony that she was not subjected to any racist comments that she found offensive.[30] For example in 2017 plaintiff testified:

> Q.   Ms. Reed, in the past three years has anyone at the company ever made a comment to you that was racist in nature?
>
> A.   No.  I get joked about my complexion.  I get joked about my hair texture.
>
> Q.   From who?

---

[29]Defendant's MSJ, Docket Entry No. 21, p. 13.

[30]Id.

-16-

A.    Employees.  It's just ---

Q.    People who work underneath you?

A.    It's just a joke.

Q.    Nothing that you took offense to?

A.    Not offended.

Q.    Has anyone in -- in management ever made any joke
      to you about your complexion or hair texture?

A.    No.  It's really been compliments.[31]

In 2018 plaintiff similarly testified:

Q.    Can you tell me all the ways in which you believe
      CenterPoint discriminated against you on the basis
      of your race?

A.    The complexion of my skin tone used to come up
      quite often on the floor, how I dressed.  Someone
      always had some -- some comment about, "Ms. Reed,
      you really should be getting ahead because you're
      closer to their race than you are to ours," or
      something like that. But it didn't really bother
      me.  What bothered me was when my director stated
      that I would go no further because of the hair
      color.[32]

Defendant cites additional excerpts from plaintiff's
deposition testimony as evidence that the workplace conduct
plaintiff found offensive was not sufficiently severe or pervasive
to support a hostile environment claim.  For example, plaintiff
testified that she felt it was unacceptable for her manager, Eric
Briseno, to state in her performance review that she "come[s] to

_____

[31]Plaintiff's 2017 Deposition, Exhibit B to Defendant's MSJ,
Docket Entry No. 21-2, p. 20:8-21.

[32]Plaintiff's 2018 Deposition, Exhibit A to Defendant's MSJ,
Docket Entry No. 21-1, p. 20:6-16.

work and [does] as [she] please[s];"[33] that her manager, Edward Agbemafle, bullied her about how she spent money from a fundraiser she led in the office,[34] and that she felt the Final Warning she received was an "unfair" and "hostile" act that happened because "Oscar Anthony was out to get [her]."[35]

Plaintiff has not presented evidence of harassment that was either sufficiently severe or pervasive to create an actionable hostile environment, or that a reasonable fact-finder could conclude was motivated by animus for her race (African-American). The evidence cited by the defendant and exhibited in plaintiff's deposition testimony shows that plaintiff believed her director, Shonda Johnson, discriminated against her not because of her race but, instead, because of her hair color (purple), and because Ms. Johnson disliked her. For example, plaintiff testified

> Q. Okay. You also mentioned Shonda Johnson as your director. Do you have any complaints about the way Shonda treated you in the workplace during your time at CenterPoint?
>
> A. Yes.
>
> Q. Okay. Tell me about what those concerns are.

---

[33]Defendant's MSJ, Docket Entry No. 21, p. 13 (citing Plaintiff's 2017 Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 21-2, p. 12:4-11).

[34]Id. at 13-14 (citing Plaintiff's 2017 Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 21-2, p. 12:15 - p. 16:21).

[35]Id. at 14 (citing Plaintiff's 2017 Deposition, Exhibit B to Defendant's MSJ, Docket Entry No. 21-2, p. 18:2-23 and p. 19:1-20).

A.   She discriminated against me by the color of my
     hair, told me I would never go anyplace within the
     company.  As a matter of fact, she told me to --
     she -- when my -- when I colored my hair purple, I
     went to her to give her an idea about how we can
     improve -- how can we -- we can improve on a
     process with our training.

     And she said, "Cindy Reed, someone came to me and
     told me that one of my leads had purple hair.  I
     was shock[ed] to find out that it was you."

     I said, "What has the color of my hair have to do
     with anything?"

     She said, "You will never be in any meetings with,
     for instance, Greg Knight," -- the vice-president
     over customer service or over -- I've forgotten
     what his title is.  She said, "You will never be in
     any meetings because of the color of your hair.  So
     I suggest that if you want to move forward that you
     color your hair back the way it was."

     I said, "Shonda, my hair was red."

     My hair is red today, but my hair back then was a
     little louder than it is now.

     And I said, "Shonda, my hair, when it was red, was
     a little louder than what it was at that particular
     time when it was purple."

     "I don't care.  Maybe I don't remember it.  All I'm
     telling you is that you're never going to go
     anyplace within the company if you don't color your
     hair back the way it was."

     I left her office, and I went to Eric Roundtree.
     And I said, "Eric Roundtree, I'm a little upset.  I
     think I'm being discriminated against."  And so I
     proceeded to tell him what my conversation was.

     And he said, "Let me ask around."

     Why do you have to ask around?  This is how I feel.
     I feel that I'm being discriminated against.  This
     is me.  This is my voice.  This is what happened to

me in Shonda's office.  Why do you have to go and ask anyone else about this situation?

Nothing else came of it.

Q.     Is there any other way that you believe Shonda Johnson treated you differently?

A.     I don't think that Shonda cared for me because -- because, again, I didn't go along to get along. You want to know a temperature check, I'm going to tell you.  You want to know what's going on on the floor, I'm going to tell you.  You want to know what is -- what the agents are saying?  The agents are saying that they don't like it in customer service. . .[36]

Plaintiff's deposition testimony that the abusive environment about which she complained was related to her hair color and to her personal relationship with Shonda Johnson is corroborated by statements made in the affidavit attached to Plaintiff's Response.[37] Moreover, plaintiff fails to cite any evidence from which a reasonable fact-finder could conclude that the conduct of her managers, Eric Briseno and Edward Agbemafle, which she found offensive, was either sufficiently severe or pervasive to create a hostile environment or was based on her race.  Because plaintiff

---

[36]Plaintiff's 2018 Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 21-1, p. 8:22 - p. 10:25.

[37]See Affidavit of Cindy D. Reed ("Reed Affidavit"), Exhibit 1 to Plaintiff's Response, Docket Entry No. 22-3, p. 4 (asserting that Shonda Johnson told her that "I will not go any further in Customer Service as long as my hair was purple and if she had to select someone to be in a meeting with Greg Knight it would not be me."); p. 5 ("I never stated anything about abusive working conditions."); p. 7 ("I was informed that Shonda Johnson did not care for me and  .  .  . I was informed to stay out of Shonda Johnson's way because she [wa]s out to get me.").

fails to present any evidence of race-based harassment, she has
failed to present a prima facie case for a racially abusive work
environment.

> (c) Plaintiff Fails to Establish a Claim for
> Discriminatory Termination

Defendant argues that plaintiff cannot prove that defendant
discriminated against her on the basis of race by terminating her
employment in violation of Title VII because "[w]hen deposed,
[plaintiff] clarified that this claim is based on her belief that
her employment was terminated in retaliation for [having filed]
this lawsuit."[38]   Defendant also argues that plaintiff cannot
establish either a prima facie case of retaliation or that
defendant's legitimate, non-discriminatory reason for terminating
her employment is a pretext for retaliation.[39]

Plaintiff has not responded to defendant's argument that her
Title VII claim for wrongful termination is based on allegations
that defendant terminated her employment in retaliation for having
filed this action.   Plaintiff argues instead that she has adduced
sufficient evidence both to establish a prima facie case of
discriminatory termination and to raise a genuine issue of material
fact as to whether defendant's proffered reason for her termination
was a pretext for race discrimination.[40]

---

[38]Defendant's MSJ, Docket Entry No. 21, p. 14.

[39]Id. at 14-17.

[40]Plaintiff's Response, Docket Entry No. 22, p. 2; Plaintiff's
Memorandum of Law & Facts, Docket Entry No. 22-2, pp. 4-5.

-21-

## (1) Plaintiff Fails to Establish a Prima Facie Case

A prima facie case of racially discriminatory termination requires a showing that the plaintiff (1) was a member of a protected class; (2) was qualified for the position at issue; (3) was the subject of an adverse employment action, i.e., termination; and (4) was treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. Paske v. Fitzgerald, 785 F.3d 977, 985 (5th Cir.), cert. denied, 136 S. Ct. 536 (2015).

Plaintiff argues that she

> establishes a prima facie case as follows: CenterPoint has admitted that [plaintiff] is an African American female. [Plaintiff]'s summary judgment evidence establishes that she performed the duties of her position at Centerpoint Energy, Inc. for twelve years at the time of her termination. Her summary judgment evidence establishes that although [she] was qualified for her position, she was terminated while a white female or white females were retained in similar positions. Reed's supporting documents and affidavits establish a prima facie case of discrimination through adverse employment action concerning the protected category. [Plaintiff] recognizes that CenterPoint Energy Inc. has articulated a non-discriminatory reason for terminating her. [Plaintiff] disputes that CenterPoint's articulated reasons are legitimate, and shows through her summary judgment evidence that they are pretextual. It is undisputed that she performed the duties of her position for twelve years.[41]

---

[41]Plaintiff's Response, Docket Entry No. 22, p. 2. See also Plaintiff's Memorandum of Law & Facts, Docket Entry No. 22-2, p. 4 ¶ 8 ("Plaintiff's affidavit and accompanying documents set forth the facts that served as thee basis for her complaint. . . Plaintiff, Reed, is an African-American. She was terminated from employment while a similarly situated Caucasian female was retained in employment.").

Defendant does not dispute that plaintiff has satisfied three of the four elements required to establish a prima facie case of race discrimination under Title VII, i.e., plaintiff belongs to a protected class (African-American), plaintiff was qualified for her position, and plaintiff suffered an adverse employment action (termination). To establish the fourth element plaintiff must show, inter alia, that her "'conduct that drew the adverse employment decision [was] "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.'" Paske, 785 F.3d at 985 (quoting Lee v. Kansas City Southern Railway Co., 574 F.3d 253, 259 (5th Cir. 2009)). Plaintiff argues that she was terminated while a white female or white females were retained in similar positions, but fails to identify any white female who she alleges was treated differently than she or retained in her employment under nearly identical or even similar circumstances. Because plaintiff has failed to submit evidence that a comparator was treated more favorably than she under nearly identical circumstances, she has failed to establish a prima facie case of race discrimination.

### (2) Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory Reason for Her Termination

Defendant argues that even if plaintiff could establish a prima facie case of discriminatory discharge that it is still entitled to summary judgment on her claim for discriminatory

termination because plaintiff has failed to present any evidence capable of rebutting its legitimate, non-discriminatory reason for terminating her employment. Defendant argues that

> [m]onths before she filed her Charge of Discrimination in 2016, CenterPoint issued a Final Warning to Reed because she failed to follow "standards of courtesy and good behavior; respecting the rights of others" and she "shar[ed] medical information about another employee. . . . More than a year later, after learning that Reed had continued to engage in unprofessional and demeaning conduct toward her coworkers, CenterPoint terminated her employment on July 10, 2017.[42]

Plaintiff "recognizes that [defendant] has articulated a non-discriminatory reason for terminating her."[43] Asserting that it is undisputed that she performed the duties of her position for twelve years,[44] plaintiff argues that defendant's "summary judgment evidence is incredible, and on its face shows pretext. Reed's annual evaluations by CenterPoint Energy Inc. show that Reed was a capable employee and was highly regarded by her subordinates."[45] Missing from Plaintiff's Response is any evidence from which a reasonable fact-finder could conclude either that she did not engage in the conduct for which she was terminated or that her conduct did not violate company policy. Accordingly, the court concludes that plaintiff has failed to present any evidence capable of raising a genuine issue of material fact for trial or from which

---

[42]Defendant's MSJ, Docket Entry No. 21, p. 16.

[43]Plaintiff's Response, Docket Entry No. 22, p. 2.

[44]Id.

[45]Plaintiff's Response, Docket Entry No. 22, p. 2.

a reasonable fact-finder could conclude that defendant's stated reasons for her termination were not true but were pretexts for discrimination based on race.

2. <u>Plaintiff's ADEA Claims for Age Discrimination Fail</u>

Defendant argues that plaintiff's claim for age discrimination in employment should be dismissed because "[n]ot only is there no evidence of any alleged age-based discrimination, [plaintiff] testified under oath at her deposition that even she does not believe she was discriminated against because of her age."[46] During her deposition plaintiff testified as follows:

Q. Okay. Do you believe that you were discriminated against --

A. I don't believe --

Q. -- or treated differently because of your age?

A. No, not that I'm aware of.[47]

Plaintiff's Response does not address or cite any evidence in support of her asserted claim for age discrimination in employment. The court therefore accepts as uncontested the defendant's version of the facts, <u>i.e.</u>, that plaintiff was terminated from her employment for the legitimate, non-discriminatory reason that after having been warned that she needed to follow company policies she failed to do so. Accordingly, the court concludes that defendant

_____

[46]Defendant's MSJ, Docket Entry No. 21, p. 11.

[47]Plaintiff's 2018 Deposition, Exhibit A to Defendant's MSJ, Docket Entry No. 21-1, p. 22:6-10.

is entitled to summary judgment on defendant's claim for age discrimination.

### 3. Plaintiff's State Law Claims for Discrimination Fail

Plaintiff's claims for race and age discrimination asserted under Texas Labor Code fail for the same reasons that the court has already concluded that her claims for race and age discrimination asserted under federal law fail. See Garcia, 372 S.W.3d at 633 ("Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination. (Those forms of discrimination are addressed in separate statutes.)"; Specialty Retailers, 933 S.W.2d at 492 ("Because one purpose of the Commission on Human Rights Act is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority.").

## IV. Conclusions and Order

For the reasons stated in § II, above, plaintiff's Opposed Motion for Referral to Mediation (Docket Entry No. 25) is **DENIED**; and for the reasons stated in § III, above, Defendant CenterPoint Energy, Inc.'s Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 10th day of May, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE